IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 27, 2017

**JAMES HOWARD HURTCH v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2012-A-633, 2013-I-824      Cheryl A. Blackburn, Judge**

_____

**No. M2016-00539-CCA-R3-PC**
_____

The Petitioner, James Howard Hurtch, appeals the denial of his petition for post-conviction relief by the Davidson County Criminal Court. On appeal, the Petitioner argues that he received ineffective assistance of counsel and that his guilty plea was involuntary and unknowing. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and ROBERT L. HOLLOWAY, JR., JJ., joined.

Elizabeth A. Russell, Franklin, Tennessee, for the Petitioner, James Howard Hurtch.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; Glenn Funk, District Attorney General; and Megan King, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On March 9, 2012, the Petitioner was indicted by the Davidson County Grand Jury in Case No. 2012-A-633 for two counts of aggravated burglary, one count of theft of property with the value of more than $1,000, and one count of theft of property valued at $500 or less. On July 15, 2013, the Petitioner was also charged by way of criminal information with a third count of aggravated burglary in Case No. 2013-I-824. The Petitioner was tried by a jury on one count of aggravated burglary and the theft of $500 or less from Case No. 2012-A-633 and was found guilty as charged. A sentencing hearing was set for July 17, 2013. At the hearing, the Petitioner waived his right to appeal the jury verdicts and elected to enter a plea as to the two remaining charges in Case No. 2012-A-633 and the aggravated burglary charge in Case No. 2013-I-824. In

exchange for the dismissal of the theft over $1,000, the Petitioner pled guilty to the two remaining counts of aggravated burglary and theft under $500. As a Range III, Persistent Offender, the Petitioner received an effective sentence of fifteen years' incarceration at forty-five percent.

**Guilty Plea Hearing.** At the July 17, 2013 guilty plea hearing, the State summarized the underlying facts as follows:

> . . . [O]n July 6th, 2011, in Davidson County[,] the victim, Christy Payne [ ], reported a burglary at her residence. The air conditioning unit had been removed, entry was gained, items were taken. Prints came back to the [Petitioner], James Hurtch.

> . . . [I]n case number 2013-I-824, had this case gone to trial, the [S]tate's proof would have been that on March [ ] 30[ ], 2011, in Davidson County[,] the home of Mr. Bonilla [ ] was broken into. The door had been kicked in. Inside he found his laptop were [sic] missing. And, again, prints from the scene matched to the [Petitioner], James Hurtch.

When asked by the trial court if the State's recitation of the facts were generally true, the Petitioner responded affirmatively. The court asked the Petitioner numerous questions to confirm that he understood the rights he was waiving, including that he was waiving his right to a grand jury hearing in Case No. 2013-I-824, that he was waiving his right to a sentencing hearing for the two jury verdicts, and that he was waiving his right to an appeal. Additionally, the court questioned the Petitioner about his status as a Range III offender and confirmed that the Petitioner understood his sentencing range. The court also explained to the Petitioner the rights he would waive by pleading guilty, including his right to a jury trial, his right to have a sentencing hearing, his right to confront witnesses, and his right to an appeal. The Petitioner indicated that he understood these rights and his plea agreement and that he was satisfied with his representation by trial counsel. The trial court also confirmed that the Petitioner understood his guilty plea was an "entire package deal" addressing all of his charges.

On January 2, 2014, the Petitioner filed a pro se petition for post-conviction relief, alleging several grounds of ineffective assistance of counsel. The Petitioner was appointed counsel who filed an amended petition on the Petitioner's behalf, which incorporated the Petitioner's prior pro se petition and alleged additional grounds for ineffective assistance of counsel. Specifically, the Petitioner alleged that trial counsel failed to: adequately explain the waiver of his appellate rights regarding the two jury verdicts, challenge the Petitioner's classification as a Range III offender, notice that the Petitioner had not been sentenced for the two jury verdicts, and object to inaccurate

information in the State's recitation of proof at the guilty plea hearing regarding fingerprint evidence.

**Post-Conviction Hearing.** At the October 7, 2015 post-conviction hearing, the Petitioner testified that he first learned about a potential plea agreement from trial counsel while he was awaiting sentencing on the two jury verdicts. The Petitioner said that he understood the plea agreement to address everything except for the two jury verdicts. The Petitioner also believed that he was never sentenced for the two jury verdicts. The Petitioner acknowledged that trial counsel informed him that he was required to waive his right to appeal under the terms of the guilty plea agreement. The Petitioner also recalled signing the waiver of his appellate rights but claimed that he did not understand the waiver. The Petitioner stated that he signed the agreement because he "didn't want to get forty-five years," and "[trial counsel] said [he] was facing forty-five years if [he] was found guilty of those charges at another trial."

The Petitioner claimed that trial counsel only spent "about ten minutes" before the guilty plea hearing explaining both the guilty plea agreement and his classification as a Range III offender. The Petitioner disagreed that he was a Range III offender and said that he did not realize he was waiving review of the range designation. The Petitioner believed that his Range III status was improper because his prior felonies "all stemmed from one crime spree." The Petitioner said that he wrote trial counsel two letters requesting to withdraw his guilty plea and expressing his concern over his classification as a Range III offender. The Petitioner identified two letters dated August 12, 2013, and October 2, 2013, that he received from trial counsel. In both letters, trial counsel addressed the Petitioner's classification as a Range III offender and explained how the Petitioner's prior convictions qualified him in this range. Trial counsel told the Petitioner in both letters that he did not believe the Petitioner's sentence was improper or illegal.

The Petitioner also testified that trial counsel should have objected to the State's recitation of the facts at the guilty plea hearing regarding fingerprint evidence. The Petitioner said that trial counsel told him his fingerprints were found at the house that was burglarized in Case No. 2013-I-824 and that this was untrue. The Petitioner claimed that he would not have pled guilty to these charges "but [the Petitioner] believed what [trial counsel] told [him], that [the fingerprints] were found in the home." The Petitioner acknowledged that there was fingerprint evidence against him in the case that went to trial but maintained that there was no fingerprint evidence in Case No. 2013-I-824.

On cross-examination, the Petitioner acknowledged that he made approximately ten court appearances before his trial. The Petitioner agreed that trial counsel met with him before some of these appearances and that trial counsel also met with him the day before trial. The Petitioner confirmed that trial counsel reviewed discovery with the

Petitioner before trial and explained what proof the State would present at trial. Although the Petitioner claimed that he did not see the State's notice of enhanced punishment until after the trial, he acknowledged that trial counsel discussed his prior felonies and his classification as a Range III offender. The Petitioner also confirmed that he rejected the State's initial offer to plead guilty in Case No. 2012-A-633 and that he made the decision to proceed to trial instead.

The Petitioner denied that the guilty plea agreement clearly covered both the jury verdicts and his other charges. Although the Petitioner acknowledged that there was almost a month between the jury verdicts and the guilty plea hearing, he claimed that he did not learn about the State's offer until the day of the guilty plea hearing. The Petitioner recalled discussing his guilty plea with the trial court and confirmed that he answered the trial court's questions truthfully at the guilty plea hearing. The Petitioner agreed that the trial court explained the significance of waiving his appeal rights and the prior convictions establishing his sentencing range during the plea colloquy. The Petitioner also admitted that he told the trial court he was not forced to enter the guilty plea and that he was satisfied with trial counsel's representation.

Trial counsel testified that he had been practicing law since 1998 and was an assistant public defender for fifteen years. Trial counsel represented the Petitioner and met with him on several occasions, including at multiple court dates and before trial. Trial counsel said that he discussed the Petitioner's charges and possible defenses and reviewed discovery with the Petitioner. Trial counsel testified that he and the Petitioner discussed the Range III offender classification "at great length." However, trial counsel said that the Petitioner "didn't want to accept" that multiple felonies arising out of the same case could count separately towards his sentencing range. Trial counsel testified that he also reviewed the State's notice of enhanced punishment with the Petitioner, which listed all of his prior felony convictions.

Trial counsel stated that the State offered a plea agreement after the Petitioner's trial and that he met with the Petitioner before the guilty plea hearing. Counsel also said that, as part of the plea agreement, the State agreed to bring Case No. 2013-I-824 by way of criminal information because the case was still in warrant status. Trial counsel recalled discussing this part of the agreement with the Petitioner before the guilty plea hearing. Trial counsel testified that, as a Range III offender, the Petitioner was facing up to forty-five years' imprisonment for all of his charges.

Trial counsel believed that the State's presentation of the facts at the guilty plea hearing was not inaccurate and that "prints from the scene" did not necessarily mean that fingerprints were found "in the house." Trial counsel believed that, in Case No. 2013-I-824, the Petitioner's fingerprints were found on the laptop that was stolen from the house

and that he "wasn't focusing on whether the prints were found in the house or not." After trial counsel's testimony, the post-conviction court summarized the fingerprint evidence against the Petitioner, which included fingerprints on a jewelry box and on an air conditioning unit in Case No. 2012-A-633 and on a "bungee cord box . . . just outside the residence" in Case No. 2013-I-824. The court stated that, "technically[,] the scene encompasses things around the home where nobody is supposed to be other than the residents."

The court took the matter under advisement and subsequently issued a written order denying the Petitioner's post-conviction petition on February 26, 2016. In its order, the post-conviction court accredited trial counsel's testimony and found that "the transcript of the guilty plea hearing belies [the] Petitioner's claim[s]." Regarding the Petitioner's classification as a Range III offender, the court maintained that "[the] Petitioner's past history qualifies hi[m] as a Range III[,] Persistent Offender pursuant to T.C.A. § 40-35-107." The post-conviction court concluded that the Petitioner had not established that trial counsel was ineffective or that the Petitioner was prejudiced by any alleged deficiency. Additionally, the court found that the Petitioner's guilty plea was voluntarily, intelligently, and knowingly entered. It is from this order that the Petitioner now appeals.

## ANALYSIS

On appeal, the Petitioner asserts that he received ineffective assistance of counsel and that his guilty plea was involuntary and unknowing. He argues that he "was confused about his range offender status and did not believe that the [S]tate or his trial counsel had given him proper consideration." The Petitioner also contends that trial counsel improperly negotiated a plea agreement with the State before the Petitioner was indicted in Case No. 2013-I-824, and that trial counsel provided inadequate proof at the post-conviction hearing evidencing his meetings with the Petitioner. Regarding his guilty plea, the Petitioner argues that trial counsel's failure to "proceed to trial" and "provide [the Petitioner] with enough information regarding his range of punishment" prevented him from making a voluntary, knowing, and intelligent guilty plea. The State responds that the Petitioner received effective assistance of counsel, that his guilty plea was knowing and voluntary, and the post-conviction court properly denied relief. Upon review, we agree with the State.

We begin our review of these issues by acknowledging that post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

- 5 -

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In Vaughn, the Tennessee Supreme Court repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner first argues that trial counsel was ineffective for failing to adequately explain his classification as a Range III offender. At the post-conviction hearing, trial counsel testified that he discussed the Petitioner's Range III classification "at great length" but that the Petitioner "didn't want to accept" that multiple felonies arising out of the same case could count separately towards his sentencing range. Trial counsel also testified that he reviewed the State's notice of enhanced punishment with the Petitioner, which showed eight prior felony convictions in Davidson County from 1984 to 2007. The post-conviction court accredited trial counsel's testimony, and we do not review a post-conviction court's determination of a witness's credibility. See Vaughn, 202 S.W.3d at 115. Furthermore, the guilty plea transcript shows that the Petitioner told the trial court he understood his classification as a Range III offender and he was satisfied with trial counsel's representation.

Likewise, the Petitioner's allegation that trial counsel "was not able to produce at the [post-conviction] hearing a file or any other documentary proof that he had indeed provided [the Petitioner] with the discovery materials or which evidence his meetings with [the Petitioner] prior to the plea hearing" is without merit. The Petitioner confirmed

- 7 -

at the post-conviction hearing that he reviewed discovery with trial counsel and met with trial counsel numerous times before the guilty plea hearing. Again, we will not re-examine the post-conviction court's determination of credibility or accreditation of trial counsel's testimony.

The Petitioner also appears to challenge trial counsel's decision to present the State's plea offer before he was indicted in the second burglary case. However, trial counsel explained that Case No. 2013-I-824 was brought by way of criminal information as part of the guilty plea agreement because the case was still in warrant status. Trial counsel testified that he discussed this aspect of the guilty plea agreement with the Petitioner before the guilty plea hearing. Moreover, the Petitioner acknowledged at the guilty plea hearing that he was waiving his right to a grand jury hearing in Case No. 2013-I-824 as part of his plea agreement. The record fully supports the post-conviction court's findings, and the Petitioner is not entitled to relief on these claims.

Next, the Petitioner argues that his guilty plea was involuntary and unknowing because "[t]rial counsel's interference with [the Petitioner's] right to plead not guilty and proceed to trial and trial counsel's failure to provide [the Petitioner] with enough information regarding his range of punishment prejudiced [the Petitioner] by preventing him from making a voluntary, knowing, and intelligent decision on whether or not to plead guilty." The Petitioner acknowledges that "the possibility of a greater sentence factored into his decision to plead guilty," however, he contends that "the primary factor behind [his] decision to plead guilty based upon his testimony was his fear and confusion."

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977), superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff v. State, 297 S.W.3d 208, 218 (Tenn. 2009)). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

We have already established that trial counsel did not provide ineffective assistance of counsel to the Petitioner in this case. Thus, we reject the Petitioner's claim that his guilty plea was involuntary and unknowing based on trial counsel's alleged ineffective assistance. We also note that, at the guilty plea hearing, the trial court informed the Petitioner of the rights he would waive by pleading guilty and the Petitioner repeatedly indicated that he understood those rights and the requirements of his guilty plea. As a result, the post-conviction court found that the Petitioner did knowingly and voluntarily enter his guilty plea based on the advice of counsel and that the plea was in his best interest. Trial counsel also testified that he met and conferred with the Petitioner multiple times about his guilty plea and that the Petitioner could have received a significantly greater penalty had he proceeded to trial. Again, the post-conviction court accredited trial counsel's testimony, and we will not disturb that finding. See Vaughn, 202 S.W.3d at 115.

The Petitioner's claim that he pled guilty due to his "fear and confusion" is also without merit. As we have previously established, the record shows that the Petitioner understood what he was doing when he entered his guilty plea. The record clearly shows that "his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). The Petitioner has provided no support for his contention that he was forced into the plea agreement out of fear or confusion. Moreover, the Petitioner testified during the post-conviction hearing that he pled guilty because he "didn't want to get forty-five years." The record supports the post-conviction court's determination, and the Petitioner is not entitled to relief.

## CONCLUSION

Based on the above reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE